# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CRYSTAL D. BARKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:12-cv-0044 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| PROFESSIONAL EDUCATORS OF ) | |
| TENNESSEE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court is the Defendant's Motion to Disqualify Counsel (Docket No. 6), to which the plaintiff has responded (Docket No. 14), and the defendant has filed a reply (Docket No. 19). For the reasons discussed herein, the defendant's motion will be granted.

## FACTUAL BACKGROUND

The defendant, Professional Educators of Tennessee ("PET"), is a non-profit professional organization for educators. (Docket No. 14, at 2.) Its members consist of teachers, school administrators, and student teachers in Tennessee schools. (Docket No. 19, Ex. 1.) The plaintiff, Crystal D. Barker, is a former PET employee who was hired by the organization in May 2008. (Docket No. 17, Ex. 1 ¶ 2.) During the course of her employment at PET, she became the organization's Director of Communications. (Docket No. 19, Ex. 6.) The plaintiff also served as a registered volunteer lobbyist and handled the overflow of legal calls received by PET from its members. (*Id.*) She was terminated from her employment on November 14, 2011. (Docket No. 1 ¶ 16.)

1

On January 9, 2012, the plaintiff brought suit against PET, alleging that it terminated her prior to the completion of her previously approved 12-week maternity leave period in violation of her rights under the Family and Medical Leave Act ("FMLA"). (Docket No. 1 ¶ 19.) PET maintains that it terminated the plaintiff for her lack of performance on the job. (Docket No. 19, Ex. 1 ¶ 8.) The plaintiff retained Larry Crain and Wesley Southerland, of the Crain Law Center, LLC, to serve as counsel in this action. (Docket No. 1.) Before representing the plaintiff, Mr. Crain served as PET's General Counsel from approximately April 2000 until April 2011. (Docket No. 7, Ex.1 ¶¶ 4-5; Docket No. 7, Ex. 2.)

PET has submitted evidence showing that, as its General Counsel, Mr. Crain represented the organization in a broad array of matters. Indeed, Mr. Crain served as the director of all legal affairs for PET and was responsible for all litigation involving the organization. (Docket No. 7, Ex. 2.) He provided legal advice to PET's members on a host of issues arising in connection with their employment. (Docket No. 32.) He also advised PET in connection with: (1) its general litigation strategy; (2) its lobbying activities; (3) its operations in light of an external investigation; (4) a contract dispute with another party; (5) the validity of the Board of Director's election of J.C. Bowman as Executive Director of the organization; (6) the interpretation of Tennessee statutes; and (7) the propriety of placing a disclaimer on the "Legal" portion of the organization's website. (Docket No. 19, Exs. 2, 8, 12-13; Docket No. 32.) Among other things, Mr. Crain also previously headed PET's bylaws committee, received confidential information concerning PET's next steps in light of Mr. Bowman's election by the Board of Directors, and assisted PET's former Executive Director, Walter Jewell, in disciplining two employees for

engaging in a host of alleged misconduct, including the creation of a hostile work environment.[1] (Docket No. 7, Ex. 4; Docket No. 19, Exs. 3, 9, 12.)

Cathy Kolb, the President of PET's Board of Directors and a board member of 11 years, submitted an affidavit on PET's behalf in which she states that Mr. Crain "attended, participated in, and provided legal advice to PET during [its] board meetings, conferences, and general meetings, in which the Board of Directors and/or members discussed, considered[,] and voted upon confidential matters affecting or involving PET and/or its members in the areas of policies and procedures, by-laws, goals and objectives, mission statements, fund raising, proposed or actual legislation, regulation, administrative matters, litigation, . . . personnel, and employment issues and matters." (Docket No. 22 ¶ 4.) She adds that Mr. Crain was privy to information concerning the aforementioned subjects. (*Id.*) Four current members of PET's Board of Directors have offered the same testimony via affidavit.[2] (*See* Docket Nos. 23-26 ¶ 4.)

Mr. Crain did not submit an affidavit describing the scope of his activities while he served as General Counsel. Instead, the plaintiff has offered the affidavit of Mr. Jewell, PET's former Executive Director, to explain Mr. Crain's role as General Counsel. (Docket No. 15, Ex. 1.) Mr. Jewell acted on behalf of PET in retaining Mr. Crain as General Counsel. (*Id.* ¶ 7.) In contrast to the evidence submitted by PET, Mr. Jewell describes Mr. Crain's duties as encompassing a far narrower scope. Indeed, Mr. Jewell states that, during his tenure as PET

---

[1] Mr. Jewell recalls this incident in his affidavit and states that Mr. Crain was present while he spoke to these two employees during a meeting. (Docket No. 15 ¶ 10.) The plaintiff does not dispute that this incident occurred.

[2] In addition, Bill Gemmill, a former member of PET's Board of Directors, offers substantially similar testimony in his affidavit. (*See* Docket No. 21 ¶ 5.)

Executive Director, Mr. Crain's "role was limited to representing PET members who were teachers or school administrators in legal disputes related to their employment." (Docket No. 15, Ex. 1 ¶ 10.) In addition, he "occasionally spoke at PET annual conventions and teacher orientation or school board meetings on behalf of PET." (*Id.*) According to Mr. Jewell, Mr. Crain was not given confidential information regarding the organization's hiring practices or personnel policies.[3] (*Id.* ¶ 10.) In addition, he did not have access to confidential information concerning the hiring, supervision, or job responsibilities of the plaintiff.[4]

Mr. Jewell announced his intention to retire as PET's Executive Director in June 2010. (Docket No. 19, Ex. 1 ¶ 5.) He was followed in that role by Mr. Bowman, who assumed his duties as Executive Director on January 3, 2011. (*Id.* ¶ 2.) Mr. Jewell asserts that, after becoming Executive Director, Mr. Bowman implemented significant personnel and management changes at PET. (Docket No. 15, Ex. 1 ¶ 5.) For instance, Mr. Jewell charges Mr. Bowman with rewriting the organization's bylaws without any vote by the Board of Directors and redrafting its

---

[3] Mr. Jewell also states that, following his retirement as Executive Director in December 2010, Mr. Crain, to his knowledge, did not maintain any contact with PET or its employees. (Docket No. 15, Ex. 1 ¶ 11.) However, PET has produced emails showing that Mr. Crain did indeed maintain contacts with the organization and its staff well into 2011. (Docket No. 19, Ex. 3; Docket No. 32.)

[4] There is a considerable difference of opinion as to the frequency of Mr. Crain's contacts with the plaintiff while they were both at PET. Mr. Jewell states that Mr. Crain's contacts with Ms. Barker "were rare and sporadic, at most, and dealt exclusively with potential legislation or member litigation." (Docket No. 15, Ex. 1 ¶ 9.) The plaintiff also submitted an affidavit, in which she similarly states that her contacts with Mr. Crain were few and sporadic. (Docket No. 17, Ex. 1 ¶ 4.) In contrast, PET's current Executive Director, J.C. Bowman states via affidavits that, while he was General Counsel, Mr. Crain frequently communicated with Ms. Barker about legal matters involving PET. (Docket No. 7, Ex. 1 ¶ 12; Docket No. 19, Ex. 1 ¶ 18.) Similarly, PET's current Legal and Legislative Services Liaison, Timothy Brinegar, states through his own affidavits that Ms. Barker frequently communicated with Mr. Crain concerning legal matters. (Docket No. 7, Ex. 7 ¶ 11; Docket No. 20 ¶ 7.)

4

personnel policy without any input from Mr. Crain. (*Id.* ¶ 12-13.) According to Mr. Jewell, these changes have altered PET to the point that it "bears little resemblance to the non-profit organization represented by Mr. Crain." (*Id.* ¶ 15.) The affidavits of the plaintiff and Dennis Farrell, a former member of PET's Board of Directors, offer substantially similar allegations. (*See* Docket No. 16, Ex. 1; Docket No. 17, Ex. 1.)

In response to these assertions, PET filed an affidavit by Mr. Bowman, in which he states that the organization continues to have the same purposes, mission, and membership as it did when Mr. Jewell was the Executive Director and Mr. Crain was General Counsel. (Docket No. 19, Ex. 1 ¶¶ 26, 30-31.) In addition, he adds that, while the Board of Directors is in the process of revising them, the bylaws that currently govern PET were adopted in 2008. (*Id.* ¶ 27.) PET also filed affidavits from all of the current members of the Board of Directors offering substantially the same testimony.[5] (*See* Docket Nos. 22-29.) Each current board member states that the board has authorized all decisions implemented by Mr. Bowman requiring board approval and that Mr. Bowman has the member's full support and confidence. (Docket Nos. 22-26, ¶ 16; Docket Nos. 27-29 ¶ 7.)

## ANALYSIS

Although a district court possesses inherent authority to disqualify an attorney to aid the fair administration of justice, it is not to use this remedy lightly; that is, courts must remain sensitive to the parties' choice of counsel and weigh that interest against the public's interest in fair judicial process. *See Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th

---

[5] In addition, PET filed the affidavit of former board member Bill Gemmill, which also offers substantially the same testimony as the affidavits of Mr. Bowman and the current board members. (*See* Docket No. 21.)

Cir. 1988); *Cavender v. U.S. Express Enters., Inc.*, 191 F.Supp.2d 962, 965 (E.D. Tenn. 2002) (describing motions to disqualify as being "very sensitive" and as requiring the court to "exercise judgment with an eye toward upholding the highest ethical standards of the profession, protecting the interest of the litigants in being represented by the attorney of their choosing, protecting the loyalty and confidences a prior client may have placed in a law firm or an attorney, and the overriding societal interests in the integrity of the judicial process.") In analyzing motions to disqualify counsel for conflicts of interest with former clients, the court will look to Tennessee's Rules of Professional Conduct for guidance. *See Nat'l Union Fire Ins. Co. v. Alticor, Inc.*, 466 F.3d 456, 457-58 (6th Cir. 2006), *vacated in part on other grounds*, 472 F.3d 436 (6th Cir. 2007); *see also* M.D. Tenn. R. 83.01(e)(4).

In its motion, PET argues that Mr. Crain, Mr. Southerland, and the Crain Law Center, LLC should be disqualified from representing the plaintiff in this action pursuant to Tennessee Rules of Professional Conduct 1.9(a), 1.10(a), and 3.7(a). In undertaking its analysis, the court will examine each of these rules in turn.

**I.     Rule 1.9(a)**

Tennessee Rule of Professional Conduct 1.9(a) addresses an attorney's duties to former clients and provides that:

> A lawyer [Mr. Crain] who has formerly represented a client [PET] in a matter shall not thereafter represent another person [the plaintiff] in the same or a substantially related matter in which that person's [the plaintiff's] interests are materially adverse to the interests of the former client [PET] unless the former client [PET] gives informed consent, confirmed in writing.

RPC 1.9(a). Here, it is undisputed that Mr. Crain formerly represented PET as its General Counsel, but now represents the plaintiff, a former PET employee whose interests are materially

adverse to those of the organization. PET has also not consented to this conflict in writing. Thus, both parties agree that the primary issue for resolution under Rule 1.9(a) is whether the two matters are "substantially related."

The comments to Rule 1.9 shed light on the term "substantially related." Specifically, Comment 3 states:

> Matters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute or other work the lawyer performed for the former client or if there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter, unless that information has become generally known.

Comment 3 to RPC 1.9. Comment 3e adds that the substantial relationship inquiry focuses on "the general features of the matters involved and inferences as to the likelihood that confidences were imparted by the former client that could be used to adverse effect in the subsequent representation." Comment 3e to RPC 1.9.

In support of its contention that both matters are "substantially related," PET notes that Mr. Crain represented it as General Counsel for over a decade and gained extensive knowledge about the organization's policies and procedures, mission, and business operations. (Docket No. 7, at 7.) It also asserts that the issues in the present litigation concern areas where Mr. Crain advised PET's officers and directors in his capacity as General Counsel. (*Id.* at 5.) Thus, according to PET, there is a substantial risk that confidential information that would normally have been obtained by Mr. Crain while serving as the organization's General Counsel would materially advance the plaintiff's position in this litigation.

In response, the plaintiff asserts that the matters are not "substantially related" because there is no evidence that Mr. Crain possesses any confidential information about PET's policies

7

and practices on employment and personnel matters. (Docket No. 14, at 9-10.) In support of this assertion, she relies on Mr. Jewell's affidavit, wherein he states that Mr. Crain was not given confidential information regarding PET's hiring practices or personnel policies and that he lacked access to confidential information concerning the plaintiff's hiring, supervision, or job responsibilities. (Docket No. 15 ¶ 9-10.) The plaintiff also argues that PET is no longer the same organization that Mr. Crain represented as General Counsel. (Docket No. 14 at 10-11.)

While the court does not make this decision lightly, it finds that, under the present circumstances, Mr. Crain should be disqualified pursuant to Rule 1.9(a) because both matters are "substantially related." Again, both matters are "substantially related" when "there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Comment 3 to RPC 1.9. This "substantial risk" plainly exists here.

Before representing the plaintiff in this FMLA action, Mr. Crain served as PET's General Counsel for almost 11 years. Indeed, Mr. Crain left his General Counsel post only some 8 months before the Complaint was filed in this action.[6] As General Counsel, he directed PET's legal affairs and was responsible for all litigation involving the organization and its members. The evidence submitted by PET shows that Mr. Crain advised the organization on a whole host of issues affecting both its officers and directors and its individual members. Among other things, his activities included advising PET on its general litigation strategy and assisting its former Executive Director in disciplining employees for alleged workplace misconduct. Several

---

[6] According to an affidavit submitted by Mr. Bowman, "[i]n April 2011, PET decided to discontinue Mr. Crain's role as [G]eneral [C]ounsel and so advised him, but invited him to continue representing [the organization] in other more limited areas." (Docket No. 7, Ex. 1 ¶ 5.) Neither party asserts that Mr. Crain continued to represent PET in any capacity after April 2011.

current and former members of PET's Board of Directors have testified that Mr. Crain also provided legal advice to PET during the organization's board meetings, conferences, and general meetings where confidential matters involving, among other things, the organization's policies and procedures, goals and objectives, litigation, and personnel and employment matters were discussed. Five current members of PET's Board of Directors have testified by affidavit that Mr. Crain was privy to confidential information concerning each of the aforementioned subjects.

Given the breadth of Mr. Crain's activities while serving as PET's General Counsel for almost 11 years, it is entirely reasonable to infer that he obtained confidential information that could be used to materially advance the plaintiff's position in her FMLA action against the organization. Being privy to discussions involving PET's policies and procedures on personnel and employment matters, it is likely that Mr. Crain received confidences from the organization concerning those topics that would be relevant to the instant action. Moreover, having advised PET on its litigation strategy, there is a strong likelihood that Mr. Crain possesses confidential information concerning the organization's approach to pursuing litigation, including its risk tolerance, its resources, the extent of its insurance coverage, its method of conducting settlement negotiations, and any other preferences it possesses in conducting litigation.[7] In sum, the court finds that Mr. Crain's possession of this and other information about PET creates a substantial risk that the organization's confidential information could be used against it in the present action.

---

[7] Comment 3c to Rule 1.9 notes that an attorney's knowledge of a client's preferred approach to litigation, including its preferences in settlement discussions and financial ability to withstand protracted litigation, will only be independently relevant in assessing a substantial relationship "when such information will be directly in issue or of unusual value in the subsequent matter." Comment 3c to RPC 1.9. The subsequent matter here involves a lawsuit by a former PET employee against the organization for alleged violations of the FMLA. Thus, the court fails to see how Mr. Crain's likely knowledge of PET's approach to litigation would be merely tangential or of little value to the plaintiff in this action.

The plaintiff, citing Comment 3 to Rule 1.9, contends that she has offered proof successfully rebutting any conclusion concerning the type of confidential information that Mr. Crain likely obtained during his representation of PET. The court, however, finds this argument unavailing. Comment 3 to Rule 1.9 provides that a lawyer may rebut any conclusion or presumption regarding the type of confidential information that would normally have been obtained in the prior representation by proof concerning the information actually received in the prior representation. Comment 3 to RPC 1.9. Mr. Crain did not submit an affidavit describing the information he actually received while serving as PET's General Counsel. The court finds this omission to be particularly acute here, given the evidence submitted by PET describing the breadth of activities Mr. Crain undertook while representing the organization.

Moreover, the proof upon which the plaintiff does rely, namely, Mr. Jewell's affidavit, does not sufficiently rebut the conclusion that Mr. Crain gained confidential information that could be used to materially advance the plaintiff's position in this litigation. First, Mr. Jewell only has first-hand knowledge of information imparted to Mr. Crain by Mr. Jewell; his observations of information Mr. Crain may or may not have received from other sources is hearsay. Second, although Mr. Jewell states that Mr. Crain did not obtain confidential information concerning PET's hiring practices or personnel policies, the evidence submitted by PET, including the affidavits of the organization's current and former board members, indicates otherwise. Third, the plaintiff has failed to offer any evidence showing that Mr. Crain lacked possession of confidential information concerning PET's approach to litigation; information that is certainly valuable and that could be used against the organization in this action.

Equally unavailing is the plaintiff's reliance on the purported unilateral changes instituted by Mr. Bowman that have allegedly left PET bearing little resemblance to the organization Mr.

Crain once served as General Counsel. While she does not expressly say so, it appears that the plaintiff relies on this alleged fact to argue that any confidential information possessed by Mr. Crain is of little or no value to her in the present litigation. However, PET has submitted evidence showing that the organization is essentially no different than it was when Mr. Crain was General Counsel. Indeed, Mr. Bowman states that the organization continues to have the same purposes, mission, membership, and bylaws that were in existence when Mr. Crain left his General Counsel post. Moreover, each current board member provides the same testimony and adds that: (1) the board authorized all decisions implemented by Mr. Bowman that required board approval; and (2) that Mr. Bowman has the board's full support and confidence.[8]

Thus, in light of the foregoing, the could will disqualify Mr. Crain as counsel for the plaintiff.

## II. Rule 1.10(a)

PET also moves for the disqualification of Wesley Southerland and any other attorney practicing in Mr. Crain's firm pursuant to Tennessee Rule of Professional Conduct 1.10(a). That rule provides that, "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by" Rule 1.9. RPC 1.10(a). The plaintiff did not address Rule 1.10(a) in her opposition to PET's motion. Because the court has already concluded that Mr. Crain is disqualified pursuant to Rule

---

[8] PET does not appear to dispute the plaintiff's charge that, sometime after becoming Executive Director, Mr. Bowman redrafted its personnel policies without Mr. Crain's assistance. However, even if PET's personnel policies were so altered, that fact alone does not render valueless any confidential information obtained by Mr. Crain concerning PET's employment and personnel matters during his almost 11 year tenure as General Counsel.

11

1.9(a), the plain language of Rule 1.10(a) requires that Mr. Southerland and any other attorney practicing with the Crain Law Firm, LLC also be disqualified.

## III.     Rule 3.7(a)

Finally, PET contends that Mr. Crain's disqualification is mandated by Tennessee Rule of Professional Conduct 3.7(a), which generally provides that "[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness." RPC 3.7(a). PET asserts that Mr. Crain may be called as a witness in this matter to offer testimony concerning the plaintiff's work performance, since he apparently worked with her on a regular basis while he was General Counsel. The plaintiff offered no response to this argument in her opposition to PET's motion. However, because the court has already concluded that Mr. Crain should be disqualified pursuant to Rule 1.9(a), it need not resolve whether he should likewise be disqualified under Rule 3.7(a).[9]

## **CONCLUSION**

---

[9] Even if the court considered Rule 3.7(a), it would find that it is unlikely that Mr. Crain will be a "necessary witness" at trial. "For a lawyer to be a necessary witness, his testimony must be relevant, material, and unobtainable elsewhere." *Rothberg v. Cincinnati Ins. Co.*, No. 1:06-cv-111, 2008 WL 2401190, at *2 (E.D. Tenn. June 11, 2008); *see also Nat'l Res. Def. Council v. Cnty. of Dickson, Tenn.*, No. 3:08-cv-0229, 2010 WL 5300871, at *3 (M.D. Tenn. Dec. 20, 2010). Accordingly, an attorney is a "necessary witness" for purposes of Rule 3.7(a) "only if 'there are things to which he will be the only one available to testify.'" *Rothberg*, 2008 WL 2401190, at *2 (*quoting Droste v. Julien*, 477 F.3d 1030, 1035 n.7 (8th Cir. 2007)). PET has not made such a showing here. Indeed, while it asserts that Mr. Crain may be called as a witness at trial to testify about the plaintiff's work performance, PET fails to show that he possesses any testimony concerning this topic that is unavailable elsewhere. The court also doubts that Mr. Crain would have undertaken this representation, had he anticipated being a witness at trial. In any case, Rule 3.7(a) would not provide an independent basis to disqualify Mr. Crain.

Based on the foregoing, the Defendant's Motion to Disqualify Counsel (Docket No. 6) will be **GRANTED**.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge